In the Matter of CHAMBER OF COMMERCE OF the CITY OF NEWARK, NEW JERSEY, Debtor.

No. B-73-60.

United States District Court
D. New Jersey.

Feb. 13, 1962.

Allan L. Tumarkin, Newark, N. J., for petitioners.

Riker, Danzig, Marsh & Scherer, Newark, N. J., for Fidelity Union Tr. Co.

Joseph Keane, Jersey City, N. J., receiver pro se.

Raff, Sherman & Scheider, Newark, N. J., for Supreme Eng. Co.

WORTENDYKE, District Judge.

This proceeding under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., was instituted on February 2, 1960

854

by the filing of an involuntary petition, against the captioned debtor, by three holders of bonds of the debtor of an issue of $977,900 face value, secured by a trust mortgage to Fidelity Union Trust Company, indenture trustee, upon debtor's land and building, known as 20–24 Branford Place, Newark, New Jersey.

On October 26, 1959, the Fannie E. Rippel Foundation, holder of $245,200 face value of said mortgage bonds, instituted a civil action against the debtor, in the Chancery Division of the Superior Court of New Jersey, seeking an adjudication of debtor's insolvency and the appointment of a receiver; and on December 8, 1959, the Superior Court appointed Joseph Keane, Esq. Receiver, who thereupon took possession of debtor's property and assets. Among other registered bondholders of the debtor were Solomon C. Marx, Allan L. Tumarkin, Ella Mandelbaum, Philip Mandelbaum, Edward C. Sterling, Edward C. Sterling, Trustee, Elizabeth Parks Sterling, Realty Investing Co., and 277 Park Avenue Corp. The petition in this Court was filed on December 1, 1959. Solomon C. Marx was one of the petitioning creditors, and Allan L. Tumarkin filed the petition in their behalf. The petition alleged, and the answer of the debtor admitted, that the debtor's earnings for many years had been insufficient to enable it to meet the annual interest upon its mortgage bonds, which was then delinquent in a sum exceeding $863,000.00, and the answer further admitted that, by reason of the appointment of the Receiver in the New Jersey Superior Court proceeding, the mortgage trustee, by the terms of the indenture, became entitled to institute foreclosure of the mortgage securing the bonds.

On March 15, 1960, this Court approved the involuntary petition in this proceeding and appointed the said Joseph Keane Trustee for the debtor in reorganization. On the same date the Court also permitted the joinder of additional petitioning creditors and the intervention of a Bondholders' Committee.

Before the petition for reorganization was filed, the Receiver in the New Jersey Superior Court proceeding had received a deposit of $32,500 on account of an offer of $325,000 to purchase the debtor's real estate, which constituted its sole substantial asset. This deposit was returned by the Trustee, pursuant to this Court's order of March 17, 1960. From the time of his appointment as Trustee in these proceedings, Joseph Keane has acted not only as Trustee, but also as attorney for himself, and has drawn, presented and filed all orders, reports and accounts relating to the administration of his office.

On October 24, 1960, a Plan of Reorganization was filed by Allan Tumarkin, Esq., as attorney for the Bondholders' Committee. An Alternate Plan was filed by him, in the same capacity, on November 9, 1960, and an Amended Alternate Plan on December 1, 1960. This last Plan was approved by this Court's order of March 16, 1961. The Plan was confirmed by the Court's order of May 15, 1961. Pursuant to the Court's further order of the same date, and in accordance with the Plan, the Trustee sold the land and building owned by debtor to Crown Land Corporation for $563,000.00, and this sale was confirmed by the Court's order of June 8, 1961, as amended by its order of September 11, 1961.

During the administration of the estate of the debtor, the Trustee duly prepared and filed nineteen successive monthly reports, as well as the report required by Section 167 of the Act. On December 8, 1961, the Trustee filed his First Intermediate Report and Account to December 6, 1961, showing total receipts of $711,053.47, disbursements of $9,357.90, and a balance in the hands of the Trustee in the amount of $701,695.57.

■ The Plan, as finally confirmed, simply provided that the holders of the debtor's 6% mortgage bonds should receive pro rata, to the extent of the principal and interest due thereon, the net amount available in the hands of the Trustee upon liquidation of the debtor's

assets, which consisted primarily of debtor's land and building at 20–24 Branford Place, Newark, New Jersey, to be sold at not less than $400,000.00 for cash, free and clear of all liens and encumbrances, and that upon the payment of the net proceeds of the sale of the real estate and of certain personal property in the building, the trust mortgage should be satisfield of record by the Indenture Trustee. The consummation of this Plan, except for the fact that the proceeds from the sale of the real estate very substantially exceeded the amount of the previous offer, achieved an object substantially similar to that which was sought by the Rippel Foundation in the New Jersey Superior Court proceeding. The net result of the present Chapter X proceeding has been the conversion of the debtor's assets into an aggregate cash amount in excess of that which had been offered for the property before the petition was filed. That result is relevant to the quantum of an allowance applied for only to the extent that the price increment obtained reflects contributive efforts on the part of the applicant. We cannot say how much money might have been obtained for the property in the State Court proceedings. Even if no allowances were granted in this proceeding, consummation of the Plan would still leave the debtor deeply in arrears on account of the face amount of and interest due upon its bonds. The statutory criterion justifying allowances in a proceeding of this nature is simple and well understood, i. e., benefit to the estate, and through the estate to the creditors entitled to share therein, from the services for which compensation is sought. This is substantially a single-asset estate. The mere achievement of a substantially more favorable price for the asset, as compared with that which had been offered before this proceeding was instituted, should not open the door to a consumption of the increment by way of excessive allowances.

On January 22, 1962 a hearing was held in open Court upon the Trustee's said account, and upon petitions of various attorneys and parties, involved in these proceedings, for allowances of compensation for services and for reimbursement of disbursements, pursuant to 11 U. S.C.A. §§ 641 and 642. These applications seek an aggregate of $114,674.94. They will be dealt with successively, as follows:

█ Joseph Keane, Esq., for his services as Receiver in the New Jersey Superior Court proceedings, as Trustee in the present proceeding, and as attorney pro se in both, from October 26, 1959, seeks compensation in the amount of $40,000 and reimbursement of disbursements amounting to $528.45. He represents that he, and his office associates, have devoted approximately 743½ hours to the performance of his duties in the capacities stated, and the Court finds that those services were excellent in character and productive of maximum possible benefit to the debtor's estate. None of the other parties in interest has objected to the amount which the Trustee seeks in this connection. However, a review of the file of the Clerk of this Court relating to these proceedings, as well as the content of the Trustee's affidavit, discloses that in his dual capacity the Trustee has unquestionably devoted to the service of this estate the time which he claims, that a large part of the records in the case consist of reports, petitions and orders drawn and presented by the Trustee, and supported by his presence in the various proceedings before the Court in connection therewith. The Trustee or his associate was present in Court during every proceeding herein, as well as in the New Jersey Superior Court proceedings in which he was appointed Receiver, before the commencement of the present proceedings. I find $35,000.00 a fair amount to award to the Trustee for his services in this, and in the New Jersey court, in connection with the debtor's estate, and he will therefore be awarded that amount, together with reimbursement of his disbursements of $528.45.

Allan L. Tumarkin, Esq., seeks allowances as compensation and reimbursement of disbursements in two capacities,—(1) as attorney for the petitioning

creditors, in the sum of $7,500 for services, and $107.30 for disbursements; and (2) as attorney for the Bondholders' Committee, in the amount of $35,000 for services, and $100 for disbursements. These applications have evoked vigorous opposition on the part of other parties in interest in this proceeding. The Bondholders' Committee (which is represented by Mr. Tumarkin as above noted), through Solomon C. Marx, as Chairman, and David Schechner, as Secretary, also seeks compensation for services rendered by the Executive Committee of said Bondholders' Committee (composed of Solomon C. Marx, David Schechner, Allan L. Tumarkin, John Slavin, Edward C. Sterling and Frank P. Marano), in the respective amounts of $7,500 for Mr. Marx and $2,500 for Mr. Schechner. It is difficult for the Court to understand, nor has there been any explanation, why the holders of the bonds of the debtor should have been divided into so many groups. All bondholders of the debtor belong to a single class, and they constitute, with minor exceptions, all of the creditors of the debtor. It was the filing of the involuntary petition which brought the debtor into this Court. The petitioning creditors were certain bondholders. The services rendered by the attorney for the Bondholders' Committee conferred benefit upon all bondholders. Indeed, the entire proceeding was initially conceived and effectively prosecuted by Mr. Tumarkin in behalf of this single class of creditors. His services were valuable but they were devoted to but one interest. It is, therefore, this Court's opinion that this attorney should receive only one compensatory allowance, plus full reimbursement for his actual disbursements, rather than several separate amounts, each referable to an illusory difference in his representative status.

■ In support of his application for compensation for his services as attorney for the petitioning creditors, Mr. Tumarkin sets forth a total of 141 hours, covering a period from February 1, 1960, when he spent two hours in preparing the petition, to and including his Court appearance on March 14, 1960, on return of this Court's order to show cause why the petition should not be approved. He also alleges that he consumed, in rendering additional services, 908½ hours as attorney for the Bondholders' Committee, commencing with the appointment of the Trustee for the debtor on March 15, 1960. Accordingly, this applicant asserts that he devoted a total of 1,049½ hours of his time to the interests of the bondholders from February 1, 1960 to December 21, 1961, the date upon which his petition for allowances was filed. Over this 23 month period, the aggregate hours claimed indicates the devotion of approximately 45 hours per month to this matter. Assuming no vacation periods during the period, there would remain available to the attorney approximately 250 days within which to handle any other business which he may have had. However, those who were heard in opposition to Mr. Tumarkin's applications, were willing to assume the correctness of the total number of hours which he stated he had devoted in these proceedings. An analysis of his schedules of services indicates that he spent approximately 30 hours in court. His labors in drafting and redrafting a Plan of Reorganization, and amendments thereof, and in conferring with other interested parties relating thereto, aggregate approximately 75 hours. In handling the details relating to the sale of the real estate and transfer of title, he consumed approximately 20 hours. The remaining 924 hours appear to have been occupied by routine clerical and other office activities, e. g., telephone conversations, correspondence and conferences. Upon these bases, I conclude that $16,000.00 is an ample compensation for Mr. Tumarkin's services to the bondholders, other than the Rippel Foundation, and to the debtor's estate. He will, therefore, be allowed this amount, and, in addition, $207.30 as reimbursement for his claimed disbursements.

■ I am awarding no compensation to Solomon C. Marx or to David Schechner, as officers of the executive committee of the Bondholders' Committee, because

I am convinced that whatever benefit accrued to this estate, other than that afforded by the Reorganization Trustee and by the Rippel Foundation, resulted from the efforts of Mr. Tumarkin, who was not only the attorney for the Bondholders' Committee, but also a member of the executive committee thereof.

For services rendered in the New Jersey Superior Court proceeding already alluded to, and in the present proceeding, Riker, Danzig, March & Scherer, as attorneys for Fidelity Union Trust Company, Mortgage Indenture Trustee, ask $7,500.00 and reimbursement in the amount of $1.29 for disbursements. These attorneys represent that the services rendered by them in this proceeding consumed an estimated total of 185 hours. These services consisted of conferences with other interested parties, legal research, and appearances in Court. They were of value to the debtor's estate, and to the bondholders. They will be allowed the sum of $5,500.00 for such services, and reimbursement in the amount of $1.-29 for their disbursements.

Fidelity Union Trust Company, as Trustee under the Mortgage Indenture dated March 1, 1923, claims a lien for services, pursuant to the provisions of said Indenture and of Article VIII B(3) of the Plan of Reorganization, upon the proceeds of sale of the mortgaged real estate, for compensation for the services of said Indenture Trustee from the date of said mortgage, in the amount of $3,-000. The same claimant seeks compensation in the sum of $1,100 in addition to the lien aforesaid, for further services to be rendered in connection with the distribution of the funds to debtor's bondholders. The nature and particulars of these services have been set forth in proof of claim filed. I find the amounts claimed reasonable and conclude that the claimant is entitled to be paid out of the moneys in the hands of the Reorganization Trustee, the total sum of $4,100.00 on that account.

It was the Fannie E. Rippel Foundation, a charitable corporation of New Jersey, and the holder of $245,200 face value of debtor's outstanding mortgage bonds, which instituted the New Jersey Superior Court action against the debtor, and which has continued as an active participant in the present Chapter X Reorganization proceedings. Throughout the proceedings in both tribunals, this Foundation has been actively represented and counselled by John E. Toolan, Esq., a member of the Bar of New Jersey of recognized eminence and experience. It seems obvious to the Court that without the cooperation and approval of the Foundation, the confirmation of the Plan of Reorganization, which has been approved and confirmed in these proceedings, would probably not have been possible. Mr. Toolan asks for $2,000.00 as compensation for his services, and reimbursement of disbursements in the amount of $25.00. No party in interest has opposed or criticized this application, and the Court considers it eminently reasonable under the circumstances of the case. It will therefore be allowed.

Herbert J. Hannoch, Esq., a member of the Bar of New Jersey and an eminent specialist in the field of tax law, seeks an allowance of $500.00 for services rendered to the Trustee, to the attorney for the petitioning creditors, to the Bondholders' Committee, and to the attorney for the Indenture Trustee, in the form of conferences and counseling relating to the probable tax consequences to bondholders of the proposed sale of the debtor's real estate. He also made several Court appearances in connection with certain phases of these proceedings. He estimates an aggregate of time occupied in rendering such services at ten to fifteen hours. No objection was made to Mr. Hannoch's application and the importance of his services in his particular field to the Trustee and to the Bondholders' Committee, needs no explanation. He will be allowed the sum of $500.00.

After the approval of the Plan in this matter, the Court found it necessary and desirable that an up-to-date appraisal be made of the debtor's real estate in anticipation of its sale, and as an aid in de-

termining an upset price. A complete appraisal was made by George Goldstein, A.I.A., an eminent and experienced appraiser, in whose judgment the Court has complete confidence. For his services in making that appraisal, he has made a claim of $300.00 which the Court finds most reasonable, it is not opposed by any party in interest, and will be allowed to the claimant.

■ It also became necessary and desirable that accounting services be rendered to the Trustee in his administration of the debtor's estate, and such services were rendered by James J. Hastings, C.P.A., who asks the sum of $930.00 as compensation therefor. There is no opposition to the allowance of this amount to this claimant and the Court directs that it be paid.

■ The application of Lum, Biunno and Tompkins, for compensation for services as attorneys for the debtor, must be denied upon the authority of § 249 of Chapter X, as interpreted by In re Reynolds Investing Co., Inc., 3 Cir.1942, 130 F.2d 60. However, that firm will be allowed the sum of $82.90 as reimbursement for disbursements which it incurred in making available to the Court and to the Trustee, in connection with these proceedings, certain information, documentary and otherwise, of substantial importance.

■ A further application for allowances has been made by Roston, Hort and Brussel, Esqs., attorneys for certain bondholders who represent that they rendered services to their clients involving 17 hours of time, including one Court appearance, for which they seek the sum of $1,000. As previously indicated, all of the bondholders have been benefited by the combined services of Messrs. Tumarkin, Toolan and the Trustee, with consequent benefit to the debtor's estate. Since the individuals served by Roston, Hort and Brussel were beneficiaries of the services of the other counsel and the Trustee, they should compensate their attorneys out of their share of the avails of the property sold under the Plan. Ac-

cordingly, the claim of Roston, Hort and Brussel is denied.

As heretofore noted, the Trustee in Reorganization has filed his First Intermediate Report and Account, which discloses total receipts by him of $711,053.-47, disbursements therefrom amounting to $9,357.90, and a balance in the hands of the Trustee, on December 6, 1961, in the amount of $701,695.57. Due notice of the hearing upon this account was given and plenary hearing held thereon. No objection was made thereto, and the account is, therefore, approved.

An order may be presented embodying the findings and conclusions herein set forth.